UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

FRED NEKOUEE, individually,                        :
                                                   :
            Plaintiff,                             :
                                                   :
vs.                                                :   Case No. 2:18-cv-2293
                                                   :
AKSHAY HOTELS LLC, a Kansas limited                :
liability company                                  :
                                                   :
            Defendant.                             :
_____/:

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendant, AKSHAY HOTELS LLC, a Kansas limited liability company, (sometimes referred

to as "Defendant"), for declaratory and injunctive relief, and attorney's fees, litigation expenses,

and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Tampa, Florida, in the

County of Hillsborough.

2.      Defendant AKSHAY HOTELS LLC'S property, the La Quinta Inn, is located at

10610 Marty Street, Overland Park, Kansas 66212 , in Johnson County ("La Quinta Inn").

3.      Venue is proper in the District of Kansas, Kansas City Division because the situs

of the property lies in this judicial district.  The Defendant's property is located in and does

business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   *See also* 28 U.S.C. § 2201 and § 2202.

5.      Defendant owns, leases, leases to, or operates a place of public accommodation, the La Quinta Inn, as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6.      Defendants are responsible for complying with the obligations of the ADA.

7.      The place of public accommodation that the Defendant AKSHAY HOTELS LLC owns, operates, leases or leases to is the La Quinta Inn.

8.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

9.      Mr. Nekouee travels to the Kansas City metropolitan area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who live in such area.

10.      Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the La Quinta Inn which forms the basis of this lawsuit on March 29 and 30, 2018, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to and convenient to get to the heavy equipment auction and dealerships, and his uncle and cousin he visits in the Kansas City metropolitan area.   He has definite plans and flight reservations to return to the Kansas City metropolitan area in July 2018.

11.       The Plaintiff, Mr. Nekouee, likes to stay at moderately-priced hotels like the La

Quinta Inn.     For the reasons set forth in paragraphs 9,10, 11 and 20, Mr. Nekouee plans to return to the La Quinta Inn.

12.     The Plaintiff has encountered architectural barriers at the subject property.   The barriers to access that the Plaintiff encountered at the property have endangered his safety in his wheelchair, impaired his ability or those accompanying him to park a vehicle due to a lack of signage, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, access aisles and walking surfaces, impaired his use of the restrooms in the La Quinta Inn, and have impaired his access to the goods and services at the La Quinta Inn.

13.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

14.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

15.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair, and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

16.     On his visit to the La Quinta Inn, the Plaintiff encountered changes in elevation, excessively steep running slopes and cross slopes in its parking lot, access aisles, ramps and walking surfaces (sidewalks).

17.     The Plaintiff encountered barriers to access in the men's restroom in the lobby and in the accessible guest restroom, room 111.

18.     The Plaintiff is deterred from visiting the La Quinta Inn even though he enjoys its goods and services, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

3

19.    The Plaintiff is deterred from visiting the places of public accommodation in the La Quinta Inn, even though the inn is close to the heavy equipment auction, heavy equipment dealerships, and the home of his uncle and cousin in the Kansas City metropolitan area because of the difficulties he will experience there in the parking lot, access aisles, ramps, walking surfaces (sidewalks), guest room, restrooms, restaurant, pool area and fitness center until the property is made accessible to him in a wheelchair.

20.    Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 22 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.   Fred Nekouee desires to visit the La Quinta Inn not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

21.    The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

22.    The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   Preliminary inspections of the La Quinta Inn have shown that violations exist. The violations that Fred Nekouee personally encountered or observed on his visit to the La Quinta Inn include, but are not limited to:

**PARKING AREA**

a.   In the parking lot, there are no spaces for disabled patrons with van accessible signage, in violation of Federal Law 2010 ADAAG §§ 208.2.4 and 502.6.   The Plaintiff observed this condition and it deters him from visiting the La Quinta Inn.

b.   In the parking lot, the parking space for disabled patrons shown in the photographs below taken during his visit in March 2018, has an excessively steep running slope, as steep as 1:14.1 (7.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4. This steep slope makes it very difficult for a disabled individual who requires a wheelchair for mobility to stay stable while loading and unloading from a vehicle.   The Plaintiff encountered this steep slope and was unstable in his wheelchair loading and unloading from his vehicle.   This condition deters him and other disabled individuals like him who require the use of a wheelchair for mobility from visiting the La Quinta Inn.





    c.  In the parking lot, the running slope of the access aisle serving the parking spaces for disabled patrons shown in the photographs below taken during his visit in March   2018, has an excessively steep running slope, as steep as 1:14.7 (6.8%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.   This steep slope made it very difficult for the Plaintiff, a disabled individual who requires a wheelchair for mobility, to stay stable while loading and unloading from and into a vehicle.   This steep slope deters the Plaintiff from visiting the La Quinta Inn.





d.  The running slope of the black-top walking surface to the right of the entrance, shown in the photographs below taken during his visit in March 2018, is as steep as 1:14.3 (7%), which slope is steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010 ADAAG § 403.3.





e.   The cross slop of the walking surface near the downspout shown in the photograph

above in subparagraph d. is as steep as 1:14.1 (7%), which slope is steeper than the

maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 403.3.

This steep cross slope made it difficult for the Plaintiff to remain stable in his wheelchair

on this walking surface.

f.   The running slope of the accessibility ramp to the entrance also shown in the photograph above in subparagraph b. is as steep as 1:7.5 (13.4%), which slope is dangerously steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010 ADAAG § 405.2.   It was very difficult for the Plaintiff to remain stable in his wheelchair in this access ramp, and he required assistance to ascend the ramp to enter the La Quinta Inn.

g.   The access ramp landing also shown in the photograph above in subparagraph b. has a running slope as steep as 1:16.7 (6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 405.7.1.   The Plaintiff encountered this dangerous condition in his wheelchair.

h.   The slope of the surface within the main entrance door required maneuvering space of 60 inches is as steep as 1:9.3 (10.8%), which slope is steeper than the maximum allowed slope of 1:48 (2%) within the door maneuvering space, in violation of Federal Law 2010 ADAAG § 404.2.4.4.   The Plaintiff slipped sideways in his wheelchair while trying to enter the La Quinta Inn as a result of this steep slope.   This condition deters the Plaintiff and other disabled individuals like him who require a wheelchair for mobility from visiting the La Quinta Inn.

**ENTRANCE**

i.   The threshold to the main entrance door is 1 inch and greater than the maximum allowed threshold of 0.75 inches for existing or altered doors, in violation of Federal Law 2010 ADAAG § 404.2.5.   The Plaintiff encountered this high threshold in his wheelchair,

and this high threshold made it very difficult for him to enter the La Quinta Inn at the main entrance.

**INTERIOR LOBBY AREA**

j.   The clearance width to use the water fountain is only 20 inches and the clear floor space of 30 by 48 inches that allows a forward approach by a disabled individual in a wheelchair is not provided, in violation of Federal Law 2010 ADAAG § 305.3.   The Plaintiff, who requires a wheelchair for mobility, could not use this water fountain.

**MEN'S RESTROOM IN LOBBY**

k.   The force needed to open the men's restroom door in the lobby is 8.5 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   The Plaintiff required assistance to open the door to this men's restroom.

l.   In the men's restroom in the lobby, the accessible compartment door push side maneuvering clearance in a front approach perpendicular to the doorway is 41 inches, which clearance is less than the required minimum of 48 inches, in violation of Federal Law 2010 ADAAG § 404.2.4.   The Plaintiff encountered this barrier to access in his wheelchair.

m.   In the men's restroom in the lobby, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, and the latch provided requires tight grasping and cannot be opened by a loose grip or closed fist, in violation of Federal Law 2010 ADAAG §§ 309.4, 404.2.7 and 604.8.1.2.   The Plaintiff could not pull this door closed.

n.   In the men's restroom in the lobby, the accessible compartment width is 41 inches and less than the required minimum width of 60 inches, which narrow width does not provide the required clear floor spacing and maneuvering space for an individual in a wheelchair, in violation of Federal Law 2010 ADAAG §§ 604.8.1 and 304.3.   The Plaintiff encountered this barrier to access in his wheelchair.

o.   In the men's restroom in the lobby, the rear wall grab bar is only 28 inches long and less than the required minimum length of 36 inches, in violation of Federal Law 2010 ADAAG § 604.5.2.   The short rear wall grab bar made it very difficult for the Plaintiff to position himself to use the toilet.

p.   In the men's restroom in the lobby, the side wall grab bar only extends 49 inches from the rear wall and does not extend the minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010 ADAAG § 604.5.1.   As a result of this short side wall grab bar, the Plaintiff had great difficulty positioning himself to use the toilet.

q.   In the men's restroom in the lobby, the flush control plumbing is blocking access to the rear wall grab bar, which rear wall grab bar does not have a clear length of 12 inches and 24 inches on either side of the toilet centerline, in violation of Federal Law 2010 ADAAG §§ 604, 609.3, and 604.5.2.   The Plaintiff had great difficulty using the rear wall grab bar to position himself to use the toilet.

r.   In the men's restroom in the lobby, the lavatory pipes under the sink are not insulated, in violation of Federal Law 2010 ADAAG §§ 606.3 and 606.5.   The Plaintiff used this sink and was at risk of having the skin on his legs burned due to the lack of insulation.

s.   In the men's restroom in the lobby, the toilet compartment is not accessible so the

urinal or both should be made accessible.   The urinal clear floor space width is 30 inches and less than the minimum required width of 36 inches to the alcove urinal (confined on all or part of three sides where the depth exceeds 24 inches), in violation of Federal Law 2010 ADAAG §§ 305.7.1 and 305.7.2.   The Plaintiff, who requires a wheelchair for mobility, could not access this urinal.

t.   In the men's restroom in the lobby, the toilet compartment is not accessible so the urinal or both should be made accessible.   The urinal rim is 26 inches above the finish floor, which height is higher than the maximum allowed height above the finish floor of 17 inches to permit a disabled individual in a wheelchair to use the urinal, in violation of Federal Law 2010 ADAAG § 605.2.   The Plaintiff, who requires a wheelchair for mobility, could not access this urinal.

u.   In the men's restroom in the lobby, the toilet compartment is not accessible so the urinal or both should be made accessible.   The urinal flush control is 55 inches above the finish floor, which height is higher than the maximum allowed height above the finish floor of 48 inches, in violation of Federal Law 2010 ADAAG §§ 605.4 and 309.   The Plaintiff, who requires a wheelchair for mobility, observed that he could not reach or access the urinal flush control

v.   In the men's restroom in the lobby, the space between the side wall grab bar and the cover seat dispenser is 5 inches, which space is less than the required minimum space of 12 inches, in violation of Federal Law 2010 ADAAG § 609.3.

w.   In the men's restroom in the lobby, the distance from the toilet centerline to the side wall is 21 inches and not between a minimum of 16 inches (405 mm) and a maximum of 18 inches (455 mm) from the side wall, in violation of Federal Law 2010 ADAAG §

604.2.

x.    In the men's restroom in the lobby, the paper towel dispenser is 52 inches above the finish floor and outside the reach range of an individual in a wheelchair of a minimum of 15 inches (380 mm) and a maximum of 48 inches (1220 mm) above the finish floor, in violation of Federal Law 2010 ADAAG § 308.2.1.   From his wheelchair, the Plaintiff could not reach the paper towel dispenser.

y.    In the men's restroom in the lobby, there should be more clear floor space in the compartment, and the flush control in a properly-sized compartment is not on the open and wide side of the clear floor space, in violation of Federal Law 2010 ADAAG § 604.6.

z.    In the men's restroom in the lobby, the door hardware (knob and lock) requires tight grasping, pinching, or twisting of the wrist and cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010 ADAAG §§ 309.4 and 404.2.7.

aa.    In the men's restroom in the lobby, the coat hook is installed at 58 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010 ADAAG § 603.4.   The Plaintiff could not reach this coat hook from his wheelchair.

**INTERIOR RESTAURANT AREA**

bb.    The top of the counters throughout the restaurant are 38 inches above the finish floor and higher than the maximum allowed height above the finish floor of 36 inches, in violation of Federal Law 2010 ADAAG § 904.4.1.

cc.    The bread container on the counter is 56 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches when the reach depth is less than 20 inches, in violation of Federal Law 2010 ADAAG § 308.2.2.   The Plaintiff

could not reach the bread from his wheelchair.

### ACCESSIBLE GUESTROOM—ROOM 111

dd.   The force needed to open the balcony door in the accessible guestroom (Room 111) is 13 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   The Plaintiff required assistance to open the balcony door.

ee.   The clear floor or ground space width to pass through the balcony door is 26 inches and less than the minimum required clear floor space of 30 inches, in violation of Federal Law 2010 ADAAG §§ 305 and 404.2.3.   The Plaintiff encountered this barrier to access.

ff.   The balcony door threshold is 2 inches high, which height is higher than the maximum allowed height of 0.75 inches, in violation of Federal Law 2010 ADAAG § 404.2.5.   The Plaintiff observed this condition.

gg.   The clear floor or ground space between the bed and chair in the accessible guestroom is 16 inches, which is less than the minimum required clear floor space of 30 inches, in violation of Federal Law 2010 ADAAG § 305.   The Plaintiff, who requires a wheelchair for mobility, was blocked from moving to the front of the bed on the side of the bed near this chair.

hh.   The accessible guestroom door pull side maneuvering clearance in a latch approach perpendicular to the doorway is 39 inches, which maneuvering clearance is less than the minimum required clearance of 48 inches, in violation of Federal Law 2010 ADAAG § 404.2.4.   The Plaintiff encountered this barrier to access.

ii.    The top surface of the shelf in the closet is 57 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches, in violation of Federal Law 2010 ADAAG § 308.2.   Sitting in his wheelchair, the Plaintiff could not reach the pillows on this shelf.

jj.    The iron holder in the accessible guestroom is installed at 54 inches above the finish floor, which height is higher above the finish floor than the maximum allowed height of 48 inches, in violation of Federal Law 2010 ADAAG § 308.2.   In his wheelchair, the Plaintiff could not reach the iron.

kk.    The night stand light switch in the accessible guestroom is 51 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010 ADAAG § 308.2.   From his wheelchair, the Plaintiff could not reach this light switch.

ll.    The curtain rod pull in the accessible guestroom is 57 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010 ADAAG § 308.2.   In his wheelchair, the Plaintiff could not use this curtain rod pull.

mm.    The security latch on the inside of the entrance door to the accessible guestroom is 61 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches, in violation of Federal Law 2010 ADAAG § 404.2.7.   In his wheelchair, the Plaintiff could not reach this security latch.

nn.    The clear floor space between the night stand and the air conditioning unit in the accessible guestroom is only 22 inches, and the clear floor space of 30 by 48 inches for air condition use is not provided, in violation of Federal Law 2010 ADAAG § 305.3.   As a

result of this condition, the Plaintiff could not change the settings on the air conditioner.

oo.   The clear floor space between the bed and wall in the accessible guestroom is only 18 inches, and the clear floor space of 30 by 48 inches to transfer from a wheelchair to the bed is not provided, in violation of Federal Law 2010 ADAAG § 305.3.   The Plaintiff could not transfer to the bed from his wheelchair on this side of the bed.

**ACCESSIBLE GUEST RESTROOM**

pp.   The accessible guest restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is only 6 inches and less than the required minimum clearance of 18 inches, in violation of Federal Law 2010 ADAAG § 404.2.4.   The Plaintiff encountered this barrier to access.

qq.   A permanent seat at the head end of the bathtub or a removable in-tub seat in the accessible guest restroom is not provided, in violation of Federal Law 2010 ADAAG § 607.3.   The Plaintiff observed this condition.

rr.   In the accessible guest restroom, the top of the gripping surface of the lower grab bar on the tub back wall is not below the higher grab bar and is not within a minimum of 8 inches (205 mm) and a maximum of 10 inches (255 mm) above the rim of the bathtub, in violation of Federal Law 2010 ADAAG § 607.4.1.1.   The Plaintiff observed this condition.

ss.   In the accessible guest restroom, a grab bar is not installed on the tub control end wall in violation of Federal Law 2010 ADAAG § § 607.4.1.2 and 607.4.2.2.   The Plaintiff had difficulty using the tub as a result of this condition.

tt.   In the accessible guest restroom bathtub without a permanent seat, a grab bar is not installed on the head end of the tub in violation of Federal Law 2010 ADAAG §

607.4.2.3.   The Plaintiff had difficulty using the tub as a result of this condition.

uu.   In the accessible guest restroom shower, the spray head is 72 inches above the floor of the tub, which height is higher than the maximum allowed height of 48 inches, and the spray head is not easily adjustable with one hand and requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010 ADAAG §§ 607.6 and 308.2. The Plaintiff could not adjust the spray head.

vv.   The rear wall grab bar in the accessible guest restroom only extends 14.5 inches and 21.5 inches from the centerline of the water closet and does not extend the minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side, in violation of Federal Law 2010 ADAAG § 604.5.2.   This condition made it difficult for the Plaintiff to use the toilet.

ww.      In the accessible guest restroom, the lavatory pipes under the sink are not insulated, in violation of Federal Law 2010 ADAAG §§ 606.3 and 606.5.   The Plaintiff used this sink at the risk of having the skin on his legs burned due to the lack of insulation.

xx.   The toilet paper dispenser in the accessible guest restroom is outside the reach range of an individual in a wheelchair, which dispenser centerline is 13 inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches, in violation of Federal Law 2010 ADAAG § 604.7.

yy.   The distance from the toilet centerline to the side wall in the accessible guest restroom is 22 inches and not between a minimum of 16 inches and a maximum of 18 inches from the side wall, in violation of Federal Law 2010 ADAAG § 604.2.   The Plaintiff had difficulty using the toilet as a result of this condition.

zz.   The water closet or toilet in the accessible guest restroom does not have the flush

control mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010 ADAAG § 604.6.   The Plaintiff had great difficulty using the toilet.

aaa.        In the accessible guest restroom, the door hardware (latch or handle) require tight grasping, pinching, or twisting of the wrist and cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010 ADAAG § 404.2.7.   The Plaintiff required assistance to open this door.

bbb.        The coat hook in the accessible guest restroom is at 65 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010 ADAAG § 603.4.   The Plaintiff could not reach this coat hook from his wheelchair.

ccc.        The hairdryer in the accessible guest restroom is installed at 52 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010 ADAAG § 308.2.   The Plaintiff could not reach the hairdryer from his wheelchair.

ddd.        The towel shelf in the accessible guest restroom is installed at 64 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010 § 308.2.   The Plaintiff could not reach the towels from his wheelchair.

**POOL AREA**

eee.        The walking surface to the pool area has a vertical change in level at places that is 1 inch, which change in vertical level is greater than the maximum allowed change in vertical level of 0.5 inches, in violation of Federal Law 2010 ADAAG § 303.3.   The Plaintiff encountered such a change in vertical level in his wheelchair, and it required him

to back up and try to maneuver around it.

fff.       The running slope of the walking surface around the pool is as steep as 1:10.8 (9.3%), which slope is steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010 ADAAG § 403.3.   The Plaintiff was unstable in his wheelchair on this walking surface as a result of such a steep running slope.

ggg.       The cross slope of the walking surface around the pool is as steep as 1:27 (3.7%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 403.3.   The Plaintiff was unstable in his wheelchair on this walking surface as a result of such a steep cross slope.

hhh.       The force needed to open the door to the pool area from the building is 11 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   The Plaintiff required assistance to open the door to the pool area.

iii.       The pool door does not have the signage and international symbol of accessibility required by Federal Law 2010 ADAAG § 703.7.2.1.   The Plaintiff observed this lack of signage.

jjj.       The door to the pool area from the building only opens 17 inches, which clearance width is less than the minimum clear door opening width of 32 inches, in violation of Federal Law 2010 ADAAG § 404.2.3.   The Plaintiff encountered this barrier to access.

kkk.       The knob to the door to the pool area from the building requires tight grasping, pinching, or twisting of the wrist and it cannot be opened with a closed fist or

loose grip, in violation of Federal Law 2010 ADAAG §§ 309.4 and 404.2.7.   The Plaintiff required assistance to open this door as a result of this condition.

lll.      At least one accessible means of entry, a swimming pool lift or a sloped entry, is not provided for this swimming pool with less than 300 linear feet of swimming pool wall, in violation of Federal Law 2010 ADAAG §§ 242.2, 1009.2 and 1009.3.   The Plaintiff is deterred from visiting the La Quinta Inn since this pool does not have an accessible means of entry, which lack of a means of entry discriminates against the Plaintiff and other disabled individuals like him who require a wheelchair for mobility by denying them the same recreational benefit of swimming at the hotel as a person who is able bodied.

mmm.      The slope of the surface within the outside pool entrance door required maneuvering space of 60 inches is as steep as 1:21.7 (4.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%) within the door maneuvering space, in violation of Federal Law 2010 ADAAG § 404.2.4.4.   The Plaintiff was unstable in his wheelchair in this maneuvering space, and slipped sideways while trying to get through the door.

**FITNESS CENTER**

nnn.      The phone handle in the fitness center is installed at 57 inches above the finish floor, which height is higher than the maximum allowed reach height of 48 inches above the finish floor, in violation of Federal Law 2010 ADAAG § 308.2.   The Plaintiff could not reach the phone from his wheelchair.

23.      All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

24.      The discriminatory violations described in paragraph 22 are not an exclusive list of

the Defendant's ADA violations.  Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.  The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.  In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation to determine all of the areas of non-compliance with the Americans with Disabilities Act.

25.     Defendant has discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

26.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is

warranted.

27.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

28.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

29.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

30.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the La Quinta Inn and adjacent parking lot spaces, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

31.   Millions of Americans require the use of a wheelchair for mobility.

32.   The number of wheelchair users increases in the United States every year due in part to the aging of the baby boomer generation.

33.   Removing existing architectural barriers to access under Title III of the ADA will be good for business at the La Quinta Inn.

**WHEREFORE,** Plaintiff respectfully requests:

a.   The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.   Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.   An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d.   Such other relief as the Court deems just and proper, and/or is allowable

under Title III of the Americans with Disabilities Act.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby

designates Kansas City, Kansas as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (KS #14101)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*